# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

Aaron Humphrey,

               Plaintiff,

v.

Johnson Controls, Inc.,
and
Johnson Controls Fire Protection LP,

               Defendants.

**COMPLAINT
AND JURY DEMAND**

The Plaintiff, Aaron Humphrey ("Humphrey" or "Plaintiff"), by and through his undersigned attorneys, for his Complaint against Defendants, states and alleges as follows:

## <u>PARTIES, JURISDICTION, AND VENUE</u>

1.      Plaintiff, Aaron Humphrey, is a natural person who resides in the County of Carver, State of Minnesota.

2.      Defendant Johnson Controls, Inc. is a Wisconsin corporation and a resident of Wisconsin.

3.      Defendant Johnson Control's principal executive office address is located at 507 E Michigan Street, Milwaukee, WI 53202.

4.      Defendant Johnson Controls Fire Protection LP is a Delaware limited partnership.

5.      Defendant Johnson Controls Fire Protection, LP, has a principal executive office address located at 4700 Exchange Ct #300, Boca Raton, FL 33431.

6.      Defendants are a "single employer," as they are part of a single, integrated enterprise consisting of any combination of one or more of the following: (1) they have an interrelation of operations; (2) they share common management; (3) they have a centralized control of labor relations; and (4) they share common ownership or financial control, and common principal executive and registered offices, and a common place or places of business.

7.      Alternatively, Defendants are a "joint employer," as they handle certain aspects of their employer-employee relationships jointly.

8.      Alternatively, Defendants are liable for each other's debts based on legal and equitable considerations.

9.      The acts alleged in this Complaint fall within the general subject matter jurisdiction of this Court because the violations occurred in the State of Minnesota and involve violations of Minnesota law.

10.     Venue is proper in the federal district court for the District Court of Minnesota based on diversity of citizenship of the parties, under 28 U.S.C. § 1332 (a)(1).

11.     Venue is proper in the federal district court for the District Court of Minnesota based on federal question jurisdiction, under 28 U.S.C. § 1331.

## FACTS

12.     Humphrey began his employment with Johnson Controls, formerly SimplexGrinnel, on or around January 12, 2015, as a Sprinkler Inspector.

2

13.    Humphrey enjoyed and excelled in his position.

14.    On November 11, 2020, Humphrey, and a coworker who was apprenticing with Humphrey, went to the Center Specialty Care facility in Fairmont, MN for a service call because there was a leak in the attic.

15.    After assessing the area, Humphrey and the coworker determined they would need a 12-foot or higher ladder to do the work.

16.    Humphrey called Adam Wittwer ("Wittwer"), his supervisor, who told Humphrey to go buy a ladder.

17.    However, after Humphrey called Wittwer from the store with the price of the Fiberglass ladder that meets company standards, Wittwer told him not to spend that much money.

18.    Accordingly, Humphrey and his coworker purchased a cheaper, aluminum ladder.

19.    Back at the facility, Humphrey and his coworker were not able to extend the ladder into the trap door like they normally would because the ladder was not sturdy enough.

20.    After Humphrey's coworker climbed the ladder to the attic of the facility, he warned Humphrey to be careful because the ladder had been flexing under his weight.

21.    Humphrey and his coworker performed the work.

22.    After making the repair, Humphrey descended first, while his coworker picked up the tools they had used.

3

23.     As Humphrey lowered himself down out of the trap door, he felt something pull in his shoulder before his feet reached the ladder.

24.     Humphrey felt pain in his shoulder as a result.

25.     Even though it hurt and was sore afterward, Humphrey assumed he had just pulled a muscle and it would heal.

26.     Then on Thursday, December 3, 2020, Humphrey again hurt the same shoulder while performing work for Defendants.

27.     On that day, while at the Riley Crossing facility in Chanhassen for an inspection, Humphrey needed to pry the front plate off a dry valve.

28.     However, as he was prying off the plate, his hand slipped and his arm went backwards and hyper-extended, causing pain.

29.     Humphrey was off work the following day as well as the weekend, but his shoulder pain continued during that time.

30.     Because Humphrey's shoulder pain continued all weekend, on Monday, December 7, 2020, he informed Wittwer of the work-related injury incidents.

31.     Humphrey told Wittwer of the original injury from November 11th in Fairmont as well as the additional injury from December 3rd in Chanhassen.

32.     Wittwer instructed Humphrey he could not report the original, November 11th injury, purportedly because it had "been too long."

33.     Wittwer directed Humphrey to not report and not discuss the November 11th injury with anyone.

34.     Wittwer instructed Humphrey to only report the December 3rd injury.

4

35.     Having never previously reported an injury to an employer, Humphrey relied on his supervisor Wittwer's directions and representations.

36.     Humphrey filled out an injury report on December 7, 2020.

37.     Humphrey followed Wittwer's explicit directions and reported only the December 3rd injury on the injury report.

38.     That same day, Humphrey had an exam with Dr. James Carrabre.

39.     Dr. Carrabre temporarily restricted Humphrey from performing any work where he had to raise his arm above his head and prescribed Humphrey medication to assist with the healing and the pain.

40.     Thereafter, Humphrey filed a workers' compensation claim with Defendants.

41.      Sedgwick, Defendants' workers' compensation claims manager, issued a letter dated December 9, 2020, regarding the claim.

42.     On December 16, 2020, management had a call with Humphrey to review the workplace injury incident.

43.     Humphrey recalls several people being present on the call, including Wittwer; Human Resources representative Jill Larson-Vito; a Sedgwick representative; a safety representative from Colorado; and also, a salesperson, for some reason.

44.     During the call, Humphrey was grilled about the plate and why it needed to be pried off.

45.     Defendants focused on why Humphrey pried off the plate, the tools he used, and the specific details of the incident leading to his injury.

5

46.     Humphrey openly participated in the meeting, describing the details of his injury on December 3rd.

47.     At first, Humphrey felt confused as to why such a call—with so many individuals present, focusing on Humphrey's conduct and this incident causing an injury—was necessary.

48.     It later became clear, however, that this was the beginning of a deliberate effort to terminate Humphrey under the false pretenses of "faking" a work injury.

49.     It also became clear that this was was the beginning of a deliberate effort to terminate Humphrey because of his disability, record of disability, and/or perceived disability.

50.     On December 23, 2020, Wittwer called Humphrey, told him he was being disciplined, and issued Humphrey a one-day suspension purportedly for reporting his injury "late."

51.     Humphrey was confused and did not understand why reporting an injury should warrant a suspension from work.

52.     Wittwer told Humphrey he would be suspended from work on January 6, 2021; this is the only day of work Humphrey missed related to his injury.

53.     Defendants did not attempt to accommodate Humphrey's injury, and after his suspension he continued working his normal work week and duties.

54.     Then on January 7, 2021, Wittwer texted Humphrey and directed him to fill out an incident report for the original, November 11th injury incident.

55.     Humphrey was surprised at Wittwer's about-face, contradicting his prior direction to keep the November 11th incident quiet.

56.     Humphrey nevertheless complied with his supervisor Wittwer's new instructions and filled out the incident report for the November 11th injury on January 7, 2021.

57.     Humphrey had a follow-up appointment with Dr. Carrabre on January 11, 2020, at which Dr. Carrabre submitted a request for an MRI to workers' compensation insurance for approval.

58.     Then, shortly thereafter, on January 25, 2021, Defendants abruptly terminated Humphrey's employment.

59.     In the termination letter, Wittwer/Defendants accused Humphrey of "falsifying" his injury reports.

60.     Humphrey did not falsify his injury reports.

61.     Defendants' reason for terminating Plaintiff's employment was a pretext to engage in unlawful discrimination in violation of laws that protect Plaintiff.

## PROCEDURAL BACKGROUND

62.     Plaintiff timely filed a Charge of Discrimination with the Minnesota Department of Human Rights ("MDHR").

63.     The MDHR is a Fair Employment Practices Agency authorized to receive such charges on behalf of the federal Equal Employment Opportunity Commission ("EEOC").

64.     Pursuant to statute and a work-sharing agreement, Plaintiff's Charge of Discrimination filed with the MDHR was also filed with the EEOC.

65.     Prior to commencement of this lawsuit, forty-five (45) days have elapsed since the filing of Plaintiff's Charge of Discrimination with the MDHR by operation of law and a hearing has not been held pursuant to Minnesota Statutes § 363A.29, nor has the commissioner entered into a conciliation agreement to which Plaintiff is a signator.

66.     As of the date of the commencement of this lawsuit, the MDHR has not issued Plaintiff a notice of right to sue under the Minnesota Human Rights Act ("MHRA").  A request for a dismissal is being sent to the MDHR concurrently with the commencement of this lawsuit.

67.     The EEOC has not yet issued Plaintiff a dismissal and Notice of Suit Rights as of the date of the commencement of this lawsuit.  A request for a dismissal and Notice of Suit Rights is being sent to the EEOC concurrently with the commencement of this lawsuit.

68.     Plaintiff timely commenced this action under the state non-discrimination laws, specifically the Minnesota Human Rights Act.

69.     Plaintiff timely commenced this action under the federal non-discrimination laws, specifically the Americans with Disabilities Act

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

70.     Plaintiff realleges each and every paragraph of this Complaint.

71.     Defendant, by and through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* These practices include, but are not limited to, taking adverse or otherwise negative employment action against Plaintiff because of a disability, record of disability, or perceived disability.

72.     Plaintiff suffered discrimination based on disability including, but not necessarily limited to, the termination of Plaintiff's employment.

73.     Defendant, by and through its managers and officials acting on behalf of Defendant and within the scope of their employment, engaged in unlawful discrimination in employment against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* These practices include, but are not limited to, failing to accommodate Plaintiff's disability.

74.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer, lost wages, emotional distress, and other serious damages.

<u>**COUNT II**</u>
**DISABILITY DISCRIMINATION IN VIOLATION OF
THE MINNESOTA HUMAN RIGHTS ACT**

75.     Plaintiff realleges each and every paragraph of this Complaint.

76.     Defendant, by and through its managers and officials acting on behalf of Defendant and within the scope of their employment or authority, engaged in unlawful employment practices in violation of the  Minnesota Human Rights Act, Minnesota Statutes § 363A.01 *et seq.* These practices include, but are not limited to, taking adverse or

otherwise negative employment action against Plaintiff because of a disability, record of disability, or perceived disability.

77.     Plaintiff suffered discrimination based on disability including, but not necessarily limited to, the termination of Plaintiff's employment.

78.     Defendant, by and through its managers and officials acting on behalf of Defendant and within the scope of their employment or authority, engaged in unlawful employment practices in violation of the Minnesota Human Rights Act, Minnesota Statutes § 363A.01 *et seq.* These practices include, but are not limited to, failing to accommodate Plaintiff's disability.

79.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer, lost wages, emotional distress, and other serious damages.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendants, jointly and severally, for the following:

a.     That Defendants' acts or omissions described in this Complaint constitute violations of applicable laws that protect Plaintiff;

b.     That Defendants and their employees, officers, directors, agents, successors, assignees, affiliates merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with them be enjoined from their unlawful acts;

c.      That Defendants be required to make Plaintiff whole for their adverse and retaliatory actions through restitution in the form of back pay, with interest of an appropriate inflation factor;

d.      That Plaintiff be awarded front pay and the monetary value of any employment benefits Plaintiff would have been entitled to as an employee of Defendants;

e.      That Plaintiff be awarded compensatory damages in an amount to be established at trial;

f.      That the Court award to Plaintiff attorneys' fees, costs, and disbursements pursuant to statute or as otherwise allowed by law;

g.      That the Court allow Plaintiff leave to seek punitive damages under state law;

h.      That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

Dated: October 5, 2021

**LELAND CONNERS PLC**

s/ Daniel Gray Leland

Daniel Gray Leland, MN 389027
Ryan T. Conners, MN 395313
60 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 255-2255
Fax: (612) 677-3323
Email: dan@lelandconners.com
Email: ryan@lelandconners.com

**Attorneys for Plaintiff**